**FILED**
JUN 04 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 07 CR 50058-1 |
| ) | Judge Philip G. Reinhard |
| CHARLES O. EUBANKS, ) | |
|   also known as "Chuckie," ) | |
|   also known as "Trouble" ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant CHARLES O. EUBANKS, and his attorney, DAVID J. BROWN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and is governed in part by Rule 11(c)(1)(A), as more fully set forth in paragraph 14 below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with one count of conspiring to commit robberies that would affect interstate commerce and four counts of robbery affecting interstate commerce, in violation of Title 18, United States Code, Section 1951(a), as well as four counts of using a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A).

3. Defendant has read the charges against him contained in the indictment, and the charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts Twelve, Thirteen, and Fourteen the indictment. Count Twelve charges defendant with committing a robbery affecting interstate commerce at the Englewood Beauty Supply, 515 Marchesano Drive, Rockford, Illinois on July 31, 2007, in violation of Title 18, United States Code, Section 1951(a). Count Thirteen charges defendant with using a firearm during and in relation to the Englewood Beauty Supply robbery charged in Count Twelve, a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). Count Fourteen charges defendant with committing a robbery affecting interstate commerce at the Soto's Jewelry Store, 1126 South Main Street, Rockford, Illinois on August 2, 2007, in violation of Title 18, United States Code, Section 1951(a).

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Twelve, Thirteen, and Fourteen of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

    a. With respect to Count Twelve of the indictment, defendant admits that on July 31, 2007, at approximately 5:30 p.m., he, Michael Jackson, also known as "Way Way," and Martel D. Mullins, also known as "Foe Baby," robbed the Englewood Beauty Supply store located at 515 Marchesano Drive in Rockford, Illinois. The Englewood Beauty Supply is a retail store that sells cosmetic and beauty products, most of which are manufactured outside the state of Illinois and/or the United States. Jackson and Mullins were both armed with real semi-automatic handguns, while defendant was armed with a plastic BB gun. Both defendant and Jackson pointed their weapons at the owner of the store. Mullins pointed the real handgun that he had with him at another store

employee and demanded money from the register. Defendant and Jackson then proceeded to beat the owner of the store, causing lacerations, scratches and bruising that required medical attention, including staples on the left side of his head. The other employee gave Mullins $600 cash and then was forced by Mullins at gunpoint to the back room of the store, where Mullins retrieved the video which was recording from the store's surveillance camera. The robbers also took the store owner's personal wallet.

      b.      With respect to Count Thirteen of the indictment, defendant admits that during and in relation to the Englewood Beauty Supply robbery on July 31, 2007, he knew that his co-defendants Michael Jackson and Martel D. Mullins used and carried firearms, in that they both pointed semi-automatic handguns at the victims of the robbery. Jackson pointed his firearm at the owner of the store, while Mullins pointed his firearm at the store's other employee. Mullins also forced the other employee from one point of the store to another at gunpoint. Defendant admits that he knew prior to the robbery that Jackson and Mullins possessed firearms and planned to use them during the robbery and that defendant must be held responsible for Jackson's and Mullins' actions with respect to their use of the firearms during the robbery.

      c.      With respect to Count Fourteen of the indictment, defendant admits that on August 2, 2007, at approximately 5:45 p.m., he, Michael Jackson, and Mark O. Cooper robbed the Soto's Jewelry store located at 1126 South Main Street in Rockford, Illinois. The Soto's Jewelry store is a retail store that sells jewelry, most of which is manufactured outside the State of Illinois. Defendant, Jackson, and Cooper went inside the store, all of them armed with real firearms. Defendant and Cooper hopped the counter and forced one of the store's employees to the ground at gunpoint. They then took a white gold necklace and four charms from the business, having a value

of $3,000. Defendant dragged a second victim from the back room of the store to the front room. This victim sustained minor injuries consisting of scratches and bruising from being dragged.

7. Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offenses:

a. Defendant admits that on July 20, 2007, he and Thomas L. Hawkins, also known as "T-Boy," robbed the Victory Lane Auto Sales at 2805 11th Street in Rockford, Illinois. At approximately 2:15 p.m., defendant and Hawkins entered the business and pointed real firearms at the victim, forcing him to the ground. They then took $1,800 cash from the business, as well as the victim's personal wallet and two cell phones. Victory Lane Auto Sales is a used car dealership which sells automobiles, most of which were manufactured and purchased from auto auctions outside the State of Illinois.

b. Defendant admits that on July 27, 2007, he and Michael Jackson, also known as "Way Way," robbed the RB's Auto Sales at 2701 11th Street in Rockford, Illinois, while Martel D. Mullins waited outside as a lookout. At approximately 4:50 p.m., defendant and Jackson entered the business. Defendant was armed with a real semi-automatic handgun which he pointed at the employee. Jackson then looked throughout the business but was unable to find any money to take, and then told defendant, "Shoot him, he's by himself," referring to the victim. The victim was not physically harmed. Defendant and Jackson did take the victim's personal wallet and checkbook, as well as his cell phone. RB's Auto Sales is a used car dealership which sells automobiles, most of which were manufactured and purchased from auto auctions outside the State of Illinois.

c.  Defendant also admits that in committing all of the robberies outlined above, he conspired, or agreed with other persons, to commit the robberies, as evidenced by the fact that all of the robberies were committed by him and at least one other person together.

### Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.  Count Twelve carries a maximum sentence of 20 years' imprisonment. Count Twelve also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Twelve the judge also may impose a term of supervised release of up to five years.

b.  Count Thirteen carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 7 years. The sentence of imprisonment on Count Thirteen is required to be consecutive to the sentence on Count Twelve. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Thirteen also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Thirteen, the judge also may impose a term of supervised release of up to five years.

c.  Count Fourteen carries a maximum sentence of 20 years' imprisonment. Count Fourteen also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Fourteen the judge also may impose a term of supervised release of up to five years.

d.  Defendant further understands that the Court must order restitution to the victims of the offenses in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

e. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

f. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, a period of supervised release of up to five years, and special assessments totaling $300, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree and disagree on the following preliminary calculations:

a. **Applicable Guidelines**. The parties agree that the Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. The parties agree that pursuant to Guideline §§ 3D1.1 and 3D1.2, Counts Twelve and Fourteen, as well as the stipulated offenses in paragraphs 7(a) and 7(b) above, are not grouped as closely related counts, because they involved different victims and different acts

and transactions. In addition, Count Thirteen charges a violation of Title 18, United States Code, Section 924(c)(1)(A), which specifies a term of imprisonment to be imposed that must run consecutively to any other term of imprisonment.

    ii.  With respect to Count Twelve of the indictment, the Englewood Beauty Supply robbery on July 31, 2007, the parties agree and disagree on the following points:

      A.  The parties agree that the base offense level for Count Twelve is 20, pursuant to Guideline § 2B3.1(a), because the offense of conviction is a robbery.

      B.  The government contends that pursuant to Guideline § 2B3.1(b)(2)(D), the base offense level for Count Twelve must be increased 4 levels to level 24, because defendant used a dangerous weapon other than a firearm, namely a BB gun, to beat one of the victims. *Defendant reserves the right to challenge the applicability of this enhancement at sentencing.* [handwritten initials 6-4-08]

      C.  The government contends that pursuant to Guideline § 2B3.1(b)(3)(B), the offense level for Count Twelve must be increased 4 levels to level 28, because a victim sustained serious bodily injury. Defendant reserves the right to challenge the applicability of this enhancement at sentencing.

      D.  The government contends that pursuant to Guideline § 2B3.1(b)(4)(A), the offense level for Count Twelve must be increased 4 levels to level 32, because a person was abducted to facilitate commission of the offense. Defendant reserves the right to challenge the applicability of this enhancement at sentencing.

    iii.  With respect to Count Thirteen of the indictment, the parties agree that pursuant to Title 18, United States Code, Section 924(c)(1)(A)(ii) and Guideline § 2K2.4(b), defendant must be sentenced to 7 years (84 months) of imprisonment, which must be ordered to run

consecutively to any other sentence of imprisonment imposed, because defendant is responsible for the brandishing of a firearm during the commission of the Englewood Beauty Supply robbery, a crime of violence for which he has been convicted in Count Twelve.

    iv. With respect to Count Fourteen of the indictment, the Soto's Jewelry store robbery on August 2, 2007, the parties agree and disagree on the following points:

      A. The parties agree that the base offense level for Count Fourteen is 20, pursuant to Guideline § 2B3.1(a), because the offense of conviction is a robbery.

      B. The parties agree that pursuant to Guideline § 2B3.1(b)(2)(C), the base offense level for Count Fourteen must be increased 5 levels to level 25, because a firearm was brandished.

      C. The parties agree that pursuant to Guideline § 2B3.1(b)(3)(A), the offense level must be increased 2 levels to level 27, because a victim sustained bodily injury.

      D. The government contends that pursuant to Guideline § 2B3.1(b)(4)(A), the offense level for Count Fourteen must be increased 4 levels to level 31, because a person was abducted to facilitate commission of the offense. Defendant reserves the right to challenge the applicability of this enhancement at sentencing.

    v. With respect to the stipulated offense conduct outlined in paragraph 7(a) above, the Victory Lane Auto Sales robbery on July 20, 2007, the parties agree on the following points:

      A. Pursuant to Guideline § 2B3.1(a), the base offense level for the Victory Lane Auto Sales robbery is 20.

B. Pursuant to Guideline § 2B3.1(b)(2)(C), the base offense level for the Victory Lane Auto Sales robbery must be increased 5 levels to level 25, because a firearm was brandished.

vi. With respect to the stipulated offense conduct outlined in paragraph 7(b) above, the RB's Auto Sales robbery on July 27, 2007, the parties agree on the following points:

A. Pursuant to Guideline § 2B3.1(a), the base offense level for the RB's Auto Sales robbery is 20.

B. Pursuant to Guideline § 2B3.1(b)(2)(C), the base offense level for the RB's Auto Sales robbery must be increased 5 levels to level 25, because a firearm was brandished.

C. Pursuant to Guideline § 2B3.1(b)(2)(F), the offense level for the RB's Auto Sales robbery must be increased 2 levels to level 27, because a threat of death was made.

vii. If the court accepts the government's Guideline calculations outlined above, then pursuant to Guideline § 3D1.4(a), Count Twelve comprises one unit as the group with the highest offense level (32). Count Fourteen (level 31) also comprises one unit, because it is from 1 to 4 levels less serious than Count Twelve. In addition, the stipulated offense conduct for the Victory Lane Auto Sales robbery (level 25) and the RB's Auto Sales robbery (level 27) each comprise one-half unit, because they are both between 5 and 8 levels less serious than Count Twelve. Together, Counts Twelve and Fourteen and the stipulated offense conduct for the Victory Lane Auto Sales and RB's Auto Sales robberies comprise 3 units, mandating a 3 level increase to the group with

9

the highest offense level, pursuant to Guideline § 3D1.4. Thus, under the government's calculations, defendant's combined offense level is 35.

    viii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    ix. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government and stipulated below, defendant's criminal history points equal 8 and defendant's criminal history category is IV:

    i. On or about July 11, 2005, defendant was convicted of the felony offense of aggravated unlawful use of a weapon in the Circuit Court of Winnebago County, Illinois. On August 11, 2005, defendant was sentenced to 1 year and 3 months in the Illinois Department of

Corrections. Defendant was paroled from the Illinois Department of Corrections for this sentence on November 17, 2005, and his sentence was discharged on July 28, 2006. Defendant must receive 3 criminal history points for this sentence, pursuant to Guideline § 4A1.1(a).

    ii.  On or about November 14, 2006, defendant was convicted of domestic battery in the Circuit Court of Winnebago County, Illinois, and was sentenced to 12 months of probation, 180 days in the Winnebago County Jail, and $368 fines and costs. Defendant must receive 2 criminal history points for this sentence, pursuant to Guideline § 4A1.1(b).

    iii.  Defendant must receive 2 criminal history points pursuant to Guideline § 4A1.1(d), because he committed the instant offenses while under a criminal justice sentence, namely the probation sentence outlined in paragraph 10(c)(ii) above.

    iv.  Defendant must receive 1 criminal history point pursuant to Guideline § 4A1.1(e), because he committed the instant offenses less than two years after his release from imprisonment on the sentence outlined in paragraph 10(c)(ii) above.

  d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the government anticipates the offense level for Counts Twelve and Fourteen and the stipulated offense conduct is 32, which, when combined with the anticipated criminal history category of IV, results in an anticipated advisory Sentencing Guidelines range of 168 to 210 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. In addition, defendant must serve at least 84 months (7 years) of imprisonment for Count Thirteen, which must be ordered to run consecutively to any other sentence of imprisonment imposed. Thus, defendant's effective Sentencing Guidelines range for Counts

Twelve and Fourteen, the stipulated offense conduct as outlined above, and Count Thirteen, is 252 to 294 months' imprisonment.

    e.  Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    f.  Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

<u>**Agreements Relating to Sentencing**</u>

  11.  The government is free to recommend whatever sentence it deems appropriate, including asking the court to impose a sentence above the applicable Guidelines range. The

defendant reserves the right to ask the court to impose a sentence below the applicable Guidelines range.

12. The parties acknowledge that defendant must be ordered to pay restitution arising from Counts Twelve and Fourteen, and defendant agrees to pay restitution arising from the stipulated offense conduct set forth above, pursuant to Title 18, United States Code, §§ 3663(a)(3), 3663A, and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

13. Defendant agrees to pay the special assessment of $300 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant. Defendant understands that convictions for Counts Nine, Eleven and Fifteen of the indictment, charging additional violations of Title 18, United States Code, Section 924(c)(1)(A), would each mandate an additional 25 year consecutive sentence of imprisonment (potentially totaling an additional 75 years of imprisonment consecutive to any other sentence of imprisonment imposed), as those convictions would constitute second or subsequent convictions under Title 18, United States Code, Section 924(c)(1)(C).

### Presentence Investigation Report/Post-Sentence Supervision

15. Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's

conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Pleas of Guilty

### Nature of Plea Agreement

18. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 50058-1.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

  c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

21. By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

## Conclusion

24.  Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25.  Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26.  Should the judge refuse to accept defendant's pleas of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27.  Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ~~May 23,~~ June 4, 2008

PATRICK J. FITZGERALD
United States Attorney

CHARLES Q. EUBANKS
Defendant

MICHAEL F. IASPARRO
Assistant U.S. Attorney
308 W. State Street - Suite 300
Rockford, Illinois 61101
(815) 987-4444

DAVID J. BROWN
Attorney for Defendant
216 N. Court Street
Rockford, Illinois 61103
(815) 968-4474

19