UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES O. EUBANKS, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Case No. 07-CR-50058-1 |
| v. | ) | Assigned to: Honorable Judge |
| | ) | Philip G. Reinhard |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **F I L E D** |
| Respondant. | ) | |

SEP 0 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FIRST AMENDMENT PETITION

NOW into Court comes the undersigned Charles O. Eubanks, Pro Se petitioner hereinafter, referred to as petitioner and setforth his Constitutional Redress of Greivance stating that I Charles O. Eubanks is being illegally held in restraint of my liberty for the following reasons:

1) That the United States District Court lack jurisdiction because Title 18 U.S.C. , Public Law 80-772, which purported to be enacted into law was never properly enacted into law.

2) The petitioner a natural born citizen of this country with unalienable rights moves this Honorable Court pursuant to the First Amendment and Article I § 9 Cl.2, to resolve and adjudicate the Constitutional violation.

1

## I.   PRAYER FOR RELIEF

Petitioner request this Court to grant petition for writ of habeas corpus and declare unconstitutional and void ab initio: (1) Public Law 80-772 which purported to enact Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 638 et seq., and (2) more specifically, § 3231 thereof, 62 Stat. 826, which purported to confer upon "the district courts of the United States...original jurisdiction... of all offenses against the laws of the United States." These legislative Acts violated the Quorum, Bicameral and/or Presentment Clauses mandated respectively by Article I, § 5, Cl. 1, and Article I, § 7, Cl. 2 and 3, of the Constitution of the United States. The federal district court which rendered judgment and ordered commitment of Petitioner (Charles O. Eubanks), under § 3231, lacked jurisdiction and therefore, this respective judgment and commitment order is void ab initio. To detain and imprison Petitioner (Charles O. Eubanks) under void judgment and commitment order is unconstitutional and unlawful. As such, Petitioner (Charles O. Eubanks) must be discharged from his present illegal incarceration immediately.

## II.   JURISDICTION OF THIS COURT TO ISSUE ORIGINAL WRIT

"(F)ederal court (habeas) jurisdiction is conferred by the allegation of an unconstitutional restraint" for which "(t)he jurisdictional prerequisite is.... detention simpliciter". Fay v. Noia, 372 U.S. 391, 426, 430 (1963). "The Priviledge of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the Public Safety may require it," Article I, §9, Cl. 2, U.S. Const.,

which necessarily impl(ies) judicial action." Fay v. Noia, 372 U.S.
at 406, quoting Ex parte Yerger, 75 U.S. (8WALL.) 85, 98-99 (1868).
When this clause "was written into the Federal Constitution it was
settled that the writ lay to test any restraint contrary to fundamental
law...embodied in the written Constitution." 372 U.S. at 405, 426 ("at
the time...habeas was available to remedy any kind of government res-
traint contrary to fundamental law"). "(A)t the absolute minimum, the
Suspension Clause protects the writ as it existed in 1789," INS v. St.
Cyr, 533 U.S. 289, 300 (2001), quoting Felkner v. Turpin, 518 U.S.
651, 663-664 (1996), which "encompassed detention based on errors of
law, including the erroneous application or interpretation of statutes"
and was available to "answer" "pure questions of law" like raised
herein. 533 U.S. at 303,305.

This Court has explicit jurisdiction to entertain and grant writ
of habeas corpus to address unconstitutional custody and restraint.
Whether the writ of habeas corpus may also be granted by the
Supreme Court..."). See also Article 1, §9, Cl.2 ("The Supreme Court...
may issue all writs necessary or appropriate in aid of (its) jurisdiction
and agreeable to the usages and principles of law."). In construing §
14 of the 1789 Judiciary Act, now impowers this Honorable Court to
recognized that an original writ of habeas corpus may be issued from the
United States Supreme Court as part of its appellate jurisdiction.
Ex parte Bollman, 8 U.S. (4 Cranch) 75, 94-95 (1807). Ex parte Yerger,
75 U.S. at 98-99; Ex parte Lange, 85 U.S. (18 WALL.) 163, 166 (1874)
(same); Ex parte Virginia, 100 U.S. 339, 341-343 (1880). Thus, this
Petition is properly before this Court to address the illegal restraints
raised herein.

III. <u>CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED</u>

Article I, § 1, commands and declares that "(a)ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall  consist of a Senate and House of Representatives."

Article I, § 5, Cl. 1, commands, in relevant part, that "a Majority of each (House of Congress) shall constitute a Quorum to do Business," excepting therefrom permission to "adjourn from day to day" and "to compel Attendance of its Members, in such Manner, and under such Penalties as each House may provide."

Article I, § 7, Cl. 2, commands, in relevant part, that "(e)very Bill which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

Article I, § 7, Cl. 3, commands, in relevant part, that (e)very ...Resolution...to which the Concurrence of the Senate and House of Representatives may be necessary...shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill."

Title 1, United States Code, Section 106, Act of July 30, 1947, Chapter 388, Title I, Ch. 2 § 106, 61 Stat, 634, Pub.L. 80-278, provides, in relevant part, that "(w)hen (a) bill...shall have passed both Houses, it shall be printed and shall then be called the enrolled bill...and shall be signed by the presiding officers  of both Houses and sent to the President of the United States."

IV.     <u>STATEMENT OF FACTS</u>

Petitioner has been indicted, convicted, and committed into Executive custody by order of United States District Court acting pursuant

4

to the grant of original jurisdiction purportedly created by <u>Public Law 80-772</u>, Title 18, United States Code, Section 3231, by virtue of the commitment order, Petitioner (Charles O. Eubanks) has been committed into the custody of the Attorney General[1]. Due to a plea, <u>See</u> 18 U.S.C. § 4082(a) (repealed) and § 3621(a)(enacted Oct. 12, 1984, and effective Nov. 1, 1987). In respect to immediate custodian.Petitioner Charles O. Eubanks is now in the custody of Wendy Kerwin Jail Adminstrator for Ogle County Jail 105 S. 5th St. Oregon, IL 61061, under case number 07-CR-50058-1.

The text of the bill, <u>H.R. 3190</u> as amended, which became <u>Public Law 80-772</u> (enacting Title 18, United States Code, and especially section 3231), was passed only by the Senate and never passed by the House of Representatives. Moreover, that bill was never certified as enrolled, and was surreptitiously signed by the Speaker of the House and President pro tempore of the Senate under purported authority of a concurrent resolution agreed to by a Congress denounced by President Truman as a "body dominated by men with a dangerous lust for power and privilege ," 27 <u>Encyclopedia Americana</u> 175 (2005), without quorums of the respective Houses sitting. Finally, that bill was mistakenly signed by the President of the United States after it was misrepresented to him by solitary Officers as a bill passed by Houses, which was impossible since no Congress was in session.

For those reasons, <u>Public Law 80-772</u> which purportedly enacted Title 18, United States Code, Act of June 25, 1948, Chapter 654, 62 Stat. 638 et seq. and Section 3231 thereof, 62 Stat. 826, purporting

---

[1] petitioner Charles O. Eubanks was initially indicted under a presentment of charges pursuant to Illinois Compiled Statutes 5/18-2 and was held within the Custody of Winnebago County Jail November 2007, before the matter was relinquished to federal jurisdiction for federal prosecution under case No. 07-CR-50058-1, where petitioner is being commited into the custody of the Attorney General by way of Jail Admin. Wendy Kerwin for Ogle County Jail

to confer upon "the district courts of the United States...original
jurisdiction...of all offenses against the laws of the United States"
violates Article I, § 5, Cl. 1, and Article I, § 7, Cl. 2 and 3, and
are therefore unconstitutional and void ab initio. The respective
district court, which acted against Petitioner, did so without jurisdiction,
such judgment and commitment order is void ab initio, and imprisonment
thereunder is fundamentally unconstitutional and unlawful.

A.          H.R. 3190 In The First Session Of The 80th Congress

H.R. 3190 was introduced and committed to the Committee of the
entire House of Representatives on the State of the Union of the First
Session of the 80th Congress entitled "Crimes and Criminal Procedure."
See House Report No. 304 (April 24, 1947), p.1 (App. 67). See also
94 Cong. Rec. D556-D557 (Daily Digest) (charting H.R. 3190) (App. 65-
66). H.R. 3190 differed from "five...bills which...preceded it...(be-
cause) it constitute(d) a revision, as well as a codification, of the
Federal Laws relating to crimes and criminal procedure." 93 Cong. Rec.
5048-5049 (May 12, 1947)(App. 45-46). The bill was intended (1) to
revise and compile all of the criminal law, (2) to "restate" and
"consolidate" "existing statutes," (3) to "repeal" "obsolete, superseded,
redundant and repetitious statutes."(4) to coordinate the Criminal Code
with the "Federal Rules of Criminal Procedure" formerly enacted, and
(5) to "clarify and harmonize" penalties of the "many acts" passed by
Congress which were found to be "almost identical." (id.) "The bill
was ordered to be engrossed and read a third time, was read a third
time, and passed" the House on May 12, 1947, id; Journal of the House
of Representatives ("House Journal"), May 12, 1947, pp.343-344 (App.
4-5); 94 Cong. Rec. D556--D557 (showing H.R. 3190's only passage by the

6

House of Rep. on May 12, 1947), sent to the Senate and there "referrd
...to the Committee on the Judiciary." 93 Cong Rec. 5121, May 13, 1947
(App. 47); Journal of the Senate("Senate Journal"), May 13, 1947 . p 252
(App. 10)[2]

As passed and enrolled by the House of Representatives H.R. 3190
included at section 3231, Subtitled "District Courts" the following
text:

> Offenses against  the United States shall be cognizable in
> the district courts of the United States, but nothing in
> this title shall be held to take away or impair the jurisdiction
> of the courts of the several states under laws thereof.

H.R. 3190 as passed by the H. of Rep., p. 367 § 3231 (App. 110). see
United States v. Sasscer, 558 F. Supp. 33, 34 (D. MD. 1982).

On July 27, 1947, Congress adjourned without the Senate passing
H.R. 3190. See 93 Cong. Rec.10439, 10522 (July 26, 1947)(App. 48-49).
On November 17, 1947, Congress recovened pursuant to a Presidential
proclamation. Yet, Congress again "adjourned sine die on December 19,
1947;" without the Senate passing H.R. 3190. Kennedy v. Sampson, 511
F. 2d 430, 444 Appendix n. 4 (D.C. Cir. 1974).

B.      H.R. 3190 In Second Session Of The 80th Congress

The Senate Committee on the Judiciary reported amendments to
H.R. 3190 on June 14, 1948, under Sen. Rep. No. 1620. 94 Cong. Rec.8075
(June 14, 1948)(App. 50); Senate Journal, June 14, 1948, p. 452 (App.
34)[3]. Sen. Rep. No. 1620 contained "a large volume of amendments" and
"the new Federal Rules of Criminal Procedure (were) keyed to the bill
and (were) reflected in part II of (the new proposed) title 18."

---

[2]      The Senate Journal for May 13, 1947, was approved by the Senate on
May 14, 1947, Senate Journal, p. 259 (App. 11), and the House Journal for
May 12, 1947, was approved by the House on May 13, 1947, House Journal,
p. 346 (App.6 ). The Journal of the two Houses are admissable as evidence
when properly certified. 28 U.S.C. § 1736. See also House Doc. No. 355 59th
Cong, 2nd Sess, Hind's Precedents of the House of Representatives, § 2810
p. 34 (G.P.O. 1907)("Certified extracts of the Journal are admitted in

Heralding that, upon passage of the amended bill, "(u)ncertainty will be ended," the Senate wanted "the amendments adopted en bloc,' including a new jurisdictional section for Title 18. 94 Cong. Rec. 8721 (App. 51). The report contained only the proposed amendments. See Sen Rep.No. 1620, pp. 1 & 4 (App. 103-104).

"(T)he amendments were considered and agreed to en bloc" and then "ordered to be engrossed." 94 Cong. Rec. 8721-8722 (June 18, 1948)(App. 51-52), Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate)(App. 37). It was moved that "the Senate insist upon its amendments" by the House (94 Cong. Rec. at 8722); and "(o)rdered that the Secretary request the concurrence of the House of Representatives in the amendments." Senate Journal, supra, p. 506 House Journal, June 18, 1948, p. 688 (App. 16).

The House received the proposed amendments. The Clerk "read the Senate amendments" collectively into the record with which the House concurred. 94 Cong. Rec. 8864-8865 (June 18, 1948)(App. 53-54); House Journal, June 18, 1948, p. 704 (the "said Senate amendments were concurred in")(App. 17). Although "(t)he House agreed to the amendments to...H.R. 3190," Senate Journal, June 18, 1948, p. 510 (App. 38), no action was taken on H.R. 3190 as amended.[4] The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and there-after through adjournment on June 20, 1948. Moreover, the official histo-rical chart of H.R. 3190 clearly shows the only passage by the House of Representatives occurring on May 12, 1947, and specifically references volume 93, page 5048 of the Congressional Record as the recorded date the House passed the bill. 94 Cong. Rec. D556-D557 (Daily Digest).

---

[2] the courts of the United States") (App. 85). Cf. Fed, R. Evid. Rule 902(5); see 28 U.S.C. § 2072(a) and (b).

[3] The Senate approved its journal for June 14, 1948. Senate Journal June 15, 1948 ,pp461-462 (App. 35-36).

C.  Congress Agreed by Resolution To Continue Legislative Business
    By A Single Officer Of Each House During Adjournment

On June 19, 1948, the House submitted and agreed to concurrent resolutions H. Con. Res. 218 and 219 and requested concurrence by the Senate. House Journal, June 19, 1948, pp. 771-772 (App. 19-20); Senate Journal, June 18, 1948, p. 577 (App. 39). "(T)he Senate (then) passed without amendment these concurrent resolutions of the House."[5] 94 Cong. Rec. 9329 (App. 57). H. Con. Res. 218 "provid(ed) adjournment of the two Houses of Congress until December 31, 1948," id. see Concurrent Resolutions, Second Session, Eightieth Cong. H.Con. Res. 218, June 20, 1948, 62 Stat. 1435-1436 (App. 105-106). H.Con.Res. 219 "authoriz(ed) the signing of enrolled bills following adjournment," 94 Cong. Rec. 9349, specifically resolving:

> That notwithstanding the adjournment of the two Houses
> until December 31, 1948, the Speaker of the HOuse of
> Representatives and the President pro tempore of the
> Senate be, and they are hereby, authorized to sign
> enrolled bills and joint resolutions duly passed by
> the two Houses and found truly enrolled.

See Concurrent Resolutions, supra H.Con.Res. 219, June 20, 1948 62 Stat. 1436.

Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 218. 94 Cong. Rec. 9348, 9169 (App. 55,56); House Journal, June 20, 1948, p. 775; Senate Journal, June 20, 1948, p. 578 (App. 40). Both Houses reconvened on July 26, 1948, pursuant to a proclamation of President Truman. Senate Journal, July 26, 1948, p. 593 (showing reconvention); House Journal, July 26, 1948, pp. 792-793(same).[6]

D. Post-Adjournment Signing Of H.R. 3190 By Single Officers Of

---

4    The House approved the Journal for June 18, 1948 House Journal, p 714 (June 19, 1948, approving Journal for "legislative day of ...June 17, 1948"- i.e., calendar day of June 18, 1948) (App. 18);id at p. 669 (showing Friday, June 18, 1948, as "legislative day of Thursday June 17, 1948") (App. 15), and the Senate approved its Journal for June 18, 19, and 20

The Houses And Presentment To And Approval Thereof By The
President Pursuant To H.Con.Res. 219

With both Houses adjourned with no quorum, disassembled and dis-
persed, Mr. LeCompte, the Chairman of the Committee on House Administration
reported that, that committee had found H.R. 3190 "truly enrolled."
House Journal, legislative day of June 19, 1948, p. 776 (recorded under
"BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT")(App. 22).[7]
He attached his certificate of enrollment to the original H.R. 3190
passed by the House on May 12, 1947. See H.R. 3190. certified after
adjournment as "truly enrolled"(as certified by Richard H. Hunt, Director,
Center for Legislative Archives, The National Archives, Washington D.C.)
(App. 107-113). Although never certified as truly enrolled, the Speaker
and the President pro tempore respectively signed the Senate's amended
H.R. 3190 on June 22 and 23 1948. 94 Cong. Rec. 9353-9354 (App.58-59);
House Journal, legislative day June 19, 1948, p. 777 (App.23); Senate
Journal, legislative day June 18, 1948, pp. 578-579 (App. 40-41).
National Archives & Records Adm. Cert. H.R. 3190 signed by House and
Senate officers and President Truman (App. 114-117). The Senate's amended
H.R. 3190 was then presented by the committee on House Administration
to President Truman, on June 23, 1948, who signed it on June 25, 1948[8],
at 12:23 P.M. E.D.T., 94 Cong. Rec.9364-9367 (App. 61-64); House Journal
legislative day of June 19, 1948, pp. 778, 780-782 (App. 24,25-27);
Senate Journal, legislative day of June 18, 1948, pp. 579,583 (App. 41,
43). National Archives & Records Adm. Cert., H.R. 3190, supra; 94 Cong.
Rec. D557 (Daily Digest).

---

4       1948 Senate Journal, July 26, 1948, p. 593 (App. 44).

E. The Signatories Of H.R. 3190 Knew The Enacting Clause Was
   False When Signed

Public Law 80-772 stated that the enactment proceeded "by the
Senate and House of Representatives of the United States of America
in Congress assembled." See National Archives & Records Adm. Cert..
H.R. 3190 as signed into P.L. 80-772, supra. Each signatory knew that
neither "House" legislatively existed at that time, and that the legislative
process had ceased within the terms of Article I, §§ 5 and 7 on June
20, 1948.

V. REASONS FOR GRANTING WRITS

A. The Exceptional Circumstances And Constitutional Effect's
   Mandates That Application be Made To The Respective District Court

This case potentially affects We the people of America,
by challenging the district court's jurisdiction to adjudicate every
federal criminal offense coming before them pursuant to 18 U.S.C. §
3231. The effects will reach matters of national and international
concern involving the integrity of the legislative and judicial branches.
Finally, federal district court judges have a potential conflict of
interest precluding them from hearing the claims presented by 28 U.S.C.
§ 455 and Due Process of Law.

Although not "political questions" in themselves and resolvable
by the federal courts, INS.v. Chadha, 462 U.S. 919, 940-943(1983), they

---

5    The House sat from June 19 through June 20, 1948, adjourning at 6:56
A.M., House Journal, June 19, 1948, p. 775 (App. 21), and approved the
Journal of the 19th. House Journal, July 26, 1948, pp. 792-793(reconvention
by Presidential Proclamation)(App. 28-29).
6    The House Journal for July 26, 1948, was approved, House Journal,
July 27, 1948, p. 797 (App. 30), and the Senate Journal for July 26, 1948
was approved. Senate Journal, July 27, 1948, p. 593 (App. 44).

carry "significant political overtones" or "political implications"
upon "which depend public and private interests of vast magnitude."
Id. 462 U.S. at 942 and 943 (citing Marbury v. Madison, 5 U.S. (1 Cranch)
137 (1803) and quoting Marshall Field & Co. v. Clark, 143 U.S. 649,
669-670 (1892).

This Court has discretion to hear this petition in the first instance.
See Article 1, §9,Cl.2. See, e.g. Ex parte Abernathy, 320 U.S. 210 (1943)
(Per Curiam). Although such discretion is "sparingly" exercised,now is the
time because...this case presents factors which compel exercise of this courts
discretion:namely, the interests involved; the significant impact of
the issues; and the preservation of the integrity of the Judicial
Branch of government. See Sunal v. Large 332 U.S. 174, 178-180 (1947)
(exemplifying "exceptional circumstances"); Ex parte Grossman, 267 U.S.
87, 108, 121 (1925) (determining scope of President's pardon power
presents "(e)xceptional case"; New York v. Eno, 155 U.S. 89, 93-97 (1894)
(explaining "exceptions" as "case of urgency, involving the authority
and operation of the government"). See also Ex parte Hudgings, 249 U.S.
378,379-380 (1919) ("exception" standard to general rule prohibiting
by-passing "other available sources of judicial power" and to determine
if the case is "of such exceptional character" depends "upon and analysis
of the merits"): United States ex rel. Norris v. Swope ___U.S.___, 96
L.Ed. 1381, 1382 (1952) (Justice Douglas in chambers).

---

7    Mr. LeCompte's announcement was reported upon reconvention by
the President's Proclamation on July 26, 1948, 94 Cong. Rec. 9363
(App.60).
8    That same day President Truman signed into law Public Law 80-773
enacting into positive law Title 28 United States Code. Act of June
25, 1948, Ch. 646 § 1, 62 Stat. 869. That Act positively repealed the
former criminal jurisdiction granted to the district courts. id. § 39
et seq., 62 Stat. 991 et seq. (positive repeal listing former 28 U.S.C.
§ 41, ¶ 2 in schedule of repealed statutes).

An act of Congress "does not become a law unless it follows each and every procedural step charted in Article I, § 7 Cl. 2 of the Constitution." Landgraf v. USI Film Products, 511 U.S. 244, 263 (1994) (citing INS v. Chadha, 462 U.S. at 946-951 (emphasis added)): Clinton 524 U.S. at 448 (noting requisite "steps" taken before bill may "become a law" and holding that a procedurally defective enactment cannot "become a law" pursuant to the procedures designed by the Framers of Article I, § 7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its exact text was approved by a majority of the Members of the House of Representatives; (2) the Senate approved precisely the same text; and (3) that text was signed into law by the President. "If one paragraph of that text had been omitted at any of those three stages, (the law (in question) would not have been validly enacted."[9] Clinton, 524 U.S. at 448 (emphasis added). Between the second and third "procedural steps" "the bill"...shall...be presented to the President..." Article I, § 7, Cl. 2

The text of H.R. 3190 passed by the House of Representatives was the text as it existed on the date of passage-i.e. May 12, 1947. Whereas, the text of the bill passed by the Senate on June 18, 1948, was H.R. 3190 "as amended"." Senate Journal, June 18, 1948, p. 506. Thus, the text of the bills passed by the respective Houses was grossly different and neither bill ever "became a law." Clinton, 524 U.S. at 448.

---

9       "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I § 1 of the Constitution.
        "...(A) Majority of each (House) shall constitute a Quorum to do Business..." Art. I, § 5, Cl. 1.
        "Every Bill which shall have passed (both Houses), shall before it becomes a Law, be presented to the President of the United States, if he approves it..." Art. I, § 7, Cl. 2.
        "Every...Resolution...to which the Concurrence of (both Houses) may be necessary (except on a question of Adjournment) shall be presented to the

B. Permitting Post-Adjournment Legislative Business Pursuant To
   H.Con.Res.219 Violated The Quorum, Bicameral and Presentment
   Requirements Of Article I Of The Constitution

After Congress adjourned on June 20, 1948, pursuant to H.Con.Res. 219, a single officer of each House of Congress signed a bill purporting to be H.R. 3190 on June 22-23, 1948, 94 Cong. Rec. 9354; House Journal, legislative day of June 19, 1948, p. 777; Senate Journal, legislative day of June 18, 1948, pp. 578-579, and presented that bill to the President, who signed it on June 25, 1948. 94 Cong. Rec. 9365-9367. Thus, the post-adjournment signatures "provisions (of H.Con.Res. 219) was an important part of the legislative scheme," leading to the enactment of Public Law 80-772, without which it would never have "become a Law." Bowsher v. Synar, 478 U.S. 714, 728 (1986). Public Law 80-772 falsely stated it was "enacted" while both Houses were "in Congress assembled," when in fact Congress was not in session. See National Archives & Records Adm. Cert. H.R. 3190 as signed into P.L. 80-772.

The bill was the Senate's amended H.R. 3190- a bill never certified as "truly enrolled," compare Pub. L. 80-772, Enactment Clause & signature pages with H.R. 3190, certified as "truly enrolled." supra and H.Con.Res. 219 never authorized the signing of unenrolled bills after adjournment. See H.Con.Res. 219, supra, 62 Stat. 1436.

---

9 President of the United States; and before the Same shall take Effect, shall be approved by him,,," Art. § 7, Cl. 3.

Article I, § 5, Cl. 1 mandates a quorum of both Houses of Congress "to do Business." This constitutional requirement has been enforced by practice, Rules of the Houses, custom, Supreme Court holdings and duly enacted statutes.

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "Be it enacted by the Senate and House of Representatives of the Unites States of America in Congress assembled." Although the bill after passage by "both Houses" must be "enrolled" following which it shall be signed by the presiding officers of both Houses and sent to the President of the United States,"[10] 1 U.S.C. § 106, the actual procedure is regulated by House rules and established practices. Following passage the "chairman of the Committee on House Administration...affixes to the bills examined a certificate that the bill has been found truly enrolled,"[11] House Doc. No. 769, supra, Stages of a bill, § 983, No. 16, p. (483)(App. 79), after which the "enrolled bill is first laid before the House of Representatives and signed by the Speaker... after which it is transmitted to the Senate and signed by the President of that body." id. No. 17, p. (484)[12](App. 80).

The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649 (1892), defined the essence of this procedure:

> The signing by the Speaker of the House of
> Representatives, and by the President of the

---

[10]    1 U.S.C. § 106 contains an exception for enrollment "(d)uring the last six days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.
[11]    Formerly, the "chairman of the Committee on Enrolled Bills" performed this critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker." See House Doc. No. 355 59th Cong., 2nd Sess., Hinds Precedents of the House of Representatives, Ch.XCI, § 3429, notes 3 & 5, p. 311 (G.P.O. 1907)(App.92). See House Doc. No. 769, supra, Preface, p. (VI) ("The rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes..(which are) embodied in

> Senate, in open session, of an enrolled bill
> is an official attestation by the two houses
> of such bill as one that has passed Congress.
> It is a declaration by the two houses, through
> their presiding officers, to the President,
> that a bill, thus attested, has received, in
> due form, the sanction of the legislative branch
> of the government, and that it is delivered
> to him in obedience to the constitutional
> requirement that all bills which pass Congress
> shall be presented to him.

143 U.S. at 672 (emphasis added). 1 U.S.C. § 106 codified this implicit

constitutional requirement. Reading 1 U.S.C. §§ 101 and 106 together

requires that all acts must occur at least through presentment to the

President while Congress is in session. That the enrolled bill must be

"layed before the House" prior to signing by the Speaker and then

"transmitted to the Senate" before the signing by the President of that

body concludes that the respective Houses must be in session during

this transaction.[13]

　　　　An "adjournment terminates the legislative existence of Congress."

Pocket Veto Case, 279 U.S. at 681. "Th(e) expression, a "house" or

"each house." (when) employed...with reference to the faculties and

powers of the two chambers...always means...the constitutional quorum,

assembled for the transaction of business, and capable of transacting

business." 279 U.S. at 683, quoting I Curtis Constitutional History

of the United States, 486 n.1. moreover the term "Houses" means "the

---

11　　monumental work(s) of Hinds and Canon.")(App.71)

12　　The Supreme Court not only takes judicial notes of the legislative
history of a bill, Alaska v. American Can Co., 358 U.S. 224, 226-227 (1959),
but will both judicially notice and "h(o)ld" Congress and its legislative
committees "to observance of its rules." Yellin v. United States, 374 U.S.
109, 114 (1963).

House in session," 279 U.S. at 682 and "as organized and entitled to exert legislative power" that is, the legislative bodies, "organized conformably to law for the purpose of enacting legislation." id (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 281 (1919). See also House Doc. No. 355, supra, Hinds Precedents, § 2939, p. 87 ("The House is not a House without quorum")(App. 87)

No "attestation" or "declaration by the two houses...to the President," Field & Co., 143 U.S. at 672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed. See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439, 455 n. 7 (1993)(noting that the rule established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon " the enrolled bill " signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. House Doc. No. 355, supra, Hinds Precedents, Vol. IV, § 2951, pp 90-91 (upon "disclos(ure)...that there is not a quorum...(t)he House thereby becomes constitutiona lly disqualified to do further business")(excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1)( emphasis added)(App. 88-89); id, § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.")(App. 93): id. at § 3486, pp. 332-333 ( recognizing enrollment and presentment to the

_____

13      "(T)he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." United States v. Munoz-Flores, 495 U.S. 385, 391 n. 4 (1990)(citing Marshall Field & Co. v. Clark, 143 U.S. 649 (1892), in which case the Courts established the so-called "enrolled bill rule"- a rule not applicable in this case, but a ruling that supports Petitioner claims.)

President to be legislative business required to be completed before
adjournment)(App. 95-96); id, at § 3487, p. 333 n. 3 (presentment to
the President is legislative "business" which must be completed before
adjournment)(App. 96); id, at § 4788, p. 1026 ("The presentation of
enrolled bills" to the President of the United States is a "transact(ion)"
of "business" of the "House.")(App. 100).

Once a bill has passed the House of Representatives it must be
printed as an "engrossed bill" which then "shall be signed by the Clerk
of the House...sent to the other House, and in that form shall be
dealt with by that House and its officers, and , if passed, returned
signed by said Clerk." 1 U.S.C. § 106. In the immediate case H.R. 3190
was passed by the House of Representatives on May 12, 1947, engrossed
and sent to the Senate and there referred to the Senate's Committee
on the judiciary. See 93 Cong. Rec. 5048-5049, 5121; Senate Journal,
May 13, 1947, p. 252. However, it was not dealt with nor passed "in
that form."

Instead, amendments were proposed which were "agreed to en bloc,"
read into the record and "ordered to be engrossed," 94 Cong. Rec. 8721-
8722. Then, "the (amended) bill was read the third time and passed."
94 Cong. Rec.8722; Senate Journal, June 18, 1948, p. 506. The House
then concurred in the amendments en bloc. 94 Cong. Rec. 8864-8865;
House Journal, June 18, 1948, p. 704. [14]

"The HOuse in which a bill originates enrolls it," House Doc. No.
769, supra, Stages of a Bill, No. 15, p. (483)(App. 79), and, in the

---

14    This contravenes the procedures of the House of Representatives for
the 80th Congress. "When a bill with Senate Amendments, comes before the
House, the House takes up each amendment by itself..." House Doc. No.
759, Stages of a Bill in the House, § 983, No. 13, p. (483).

case of House bills, the "chairman of the Committee on House Administ-
ration...affixes to the bills examined a certificate that the bill has
been found truly enrolled," id. No. 16, p. (483), after which it is
"laid before the House...signed by the Speaker (then) transmitted to
the Senate and signed by the President of that body." id. No. 17, p.
(484). unequivocally, "(t)he Speaker may not sign an enrolled bill in
the absence of a quorum." House Doc. No. 355, supra, Hinds Precedent,
§ 3458, p. 322. Cf., id., § 2939, p. 87 ("The House is not a House without
quorum.").

The constitutional "quorum" issue is precluded from the Field
& Co.'s "enrolled bill rule" by its terms-i.e., "(t)he signing...in
open session, of an enrolled bill," 143 U.S. at 672 (emphasis added),
which in any case only applies in "the absence of (a) constitutional
requirement binding Congress." United States v. Munoz-Flores, supra
495 U.S. at 391 n. 4. Moreover, just as "§ 7 gives effect to all of
its Clauses in determining what procedures the Legislative and Executive
Branches must follow to enact a law," id, 495 U.S. 386 (emphasis by
Court), so too does Article I, § 5, Cl. 1 "provid(e) that no law could
take effect without the concurrence of the prescribed majority of the
Members of both Houses," INS v. Chadha, 462 U.S. at 949-950, as to all
legislative "Business." Cf. United States v. Ballin, 144 U.S. 1, 3-5
(1892)(to determine whether constitutionally mandated quorum was
present for legislative action the Court "assume(s)" the Journals of
the Houses are to be considered to decide the issue).

The bill signed by the Officers of the Houses presented to and
signed by the President of the United States was the Senate's amended
bill, which never passed the House. H.Con.Res. 219 only "authorized
(the) sign(ing) (of) enrolled bills...duly passed by the two Houses

and found truly enrolled," H. Con. Res. 219, supra, 62 Stat. 1436, void-

ing the signatures on the amended bill.[15]

Having not been enrolled, certified as truly enrolled, or signed
by the Speaker of the House with a quorum present, the bill was rendered
constitutionally void. House Doc. No. 769, supra, Constitution of the
United States, § 55, p. (19)("(w)hen action requiring a quorum was
taken inthe ascertained absence of a quorum...the action was null and
void")(App. 74); House Doc. No. 355, supra, Hinds Precedents, §§ 3497,
3498, pp. 344-345 (such a bill is "not in force" and is "not a valid
statute")(App. 97-98). Cf., id., Hinds Precedents, § 2962, p. 94 (to
vacate legislative act "the absence of a quorum should appear from the
Journal")(App. 90).

Art. I, § 7, mandates that a bill that has passed both Houses
"shall before it becomes a Law, be presented to the President of the
United States...;" Art. I, § 7, Cl. 2; INS v. Chadha, 462 U.S. at 945,
which "can only contemplate a presentment by the Congress in some manner,
(because)...(a)t that point the bill is necessarily in the hands of
the Congress." United States v. Kapsalis, 214 F. 2d 677, 680 (7th. Cir.
1954), cert. denied, 349 U.S. 906 (1955)(emphasis added). Thus,
presentment is clearly part of the legislative procedure required as
essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945,
947, 951; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454

---

15    On July 26, 1948, "Mr. LeCompte, from the Committee on House Admin-
istration, reported that, that committee had examined and found" that
H.R. 3190 had been "truly enrolled." 94 Cong. Rec. 9363. The version of
H.R. 3190 certified as "truly enrolled" by Mr. LeCompte, is the House
version passed on May 12, 1947, with the text of the original § 3231-
the text of which was never passed by the Senate-to which his certificate
of enrollment is attached. (App. 107-113). The Statutory mandate after
final passage and printing to "call" the bill in such final form "the
enrolled bill," 1 U.S.C. § 106, Act of July 30, 1947, Ch. 388, Ch. 2,
61 Stat. 634, is determined by the certificate "affixe(d) to the bill,"
House Doc. No. 769, Stages of a Bill, supra, No. 16, all of which is
required before the "sign(ing) by the presiding officers of both Houses
and sen(ding) to the President of the United States." 1 U.S.C. § 106.

(1899)("After a bill has been presented to the President, no further action is required by Congress in respect of that bill, unless it be disapproved by him...")(emphasis added). See House Doc. No. 355, supra, Hinds Precedents. Vol. IV, § 4788, p. 1026 (recognizing that "presentation of enrolled bills" to the President is a "transact(ion)" of "business" of "the House"): id., § 3486, p. 332 (recognizing presentment required prior to adjournment); id., § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of (legislative  business"). Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with (the) single, finely wrought and exhaustively considered, procedure" "prescri(bed)...Art. 1, §§ 1, 7." INS v. Chadha, 462 U.S. at 951.

The "draftmen" of the Constitution "took special pains to assure these (legislative) requirements could not be circumvented. During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill'. As a consequence, Art. I, § 7, Cl. 3...was added." INS v. Chadha 462 U.S. at 947( citing 2 Farrand, supra, 301,302, 304-305).

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect." INS v. Chadha, 462 U.S. at 952 (quoting S. Rep. No. 1335, 54th Cong. 2d Sess., 8 (1897). "if the power is legislative, Congress must exercise it in conformity with the bicameralism and

21

and presentment requirements of Art. I, § 7." Metropolitan, 501 U.S.
at 276. See also Bowsher v. Synar, 478 U.S. at 756 (Stevens, J., con-
curring)("it is settled, however, that if a resolution is intended to
make policy that will bind the Nation, and thus is 'legislative in its
character and effect,' S. Rep. No. 1335, 54th Cong. 2d Sess. 8, (1897)-
then the full Article I requirements must be observed. For 'the nature
or substance of the resolution, and not its form, controls the question
of its disposition.' Ibid.").

        "Congress," of course, "cannot grant to an officer under its
control what it does not possess." Metropolitan, 501 U.S. at 275 (quoting
Bowsher v. Synar, 478 U.S. at 726). Congress does not possess the
"capab(ility) of transacting business" and is not "entitled to exert
legislative power," when its "legislative existence" has been "termi-
nate(d)" by an "adjournment." Pocket Veto Case, 279 U.S. at 681-683
(citations omitted). "The limitation of the power of less than a quorum
is absolute," House Doc. No. 355, supra, Hinds Precedents, Vol. V, Ch.
CXL, § 6686, p. 851 (App. 102), and includes the signing of an enrolled
bill by the Speaker of the House, id., Vol. IV, Ch. XCL, § 3458, p. 322,
and presentment to the President of the United States. id., Ch. XCIL,
§§ 3486, 3487, & 3497, pp. 332, 333 note 3, 344 & 345 (App. 95-98).
Wright v. United States, 302 U.S. 583, 600 (1938)( Stone, J concurring)
("The houses of Congress, being collective bodies, transacting their
routine business by majority action are capable of acting only when in
session and by formal action recorded in their respective journals, or
by recognition, through such action, of an established practice.")
Thus, "Congress," as defined by the Constitution and Supreme Court,
never "presented" any  version of H.R. 3190 to the President of the
United States.

Whether the action taken under H. Con. Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." INS v. Chadha, 462 U.S. at 952. "In short, when Congress '(takes) action that ha(s) the purpose and effect of altering the legal rights, duties, and relations of persons...outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan, 501 U.S. at 276, quoting INS v. Chadha, 462 U.S. at 952-955. "If Congress chooses to use a resolution...as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 476 (D.C. Cir. 1982), Aff'd mem. sub nom. Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. at 1216 (1983).

The inescapable conlusions as to the "purpose and effect" of H. Con.Res. 219 was to enact a bill the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States with quorums sitting. In other words, H.Con.Res.219 unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I, § 7, Cl. 2 and attempted to supersede the quorum requirements of Art. I, § 5, Cl. 1 via a concurrent resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously provided a bill, the text of which had never passed either House, "mask(ed) under...(the) indirect measures," Metropolitan , supra, 501 U.S. at 277 (quoting Madison, The Federalist No. 48, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action

during adjournment with no quorum and no Congress of an extra-congres-
sional bill. Public Law 80-772 did not "become a Law" as required by
the constitutional procedures mandated under Article I, § 5, Cl. 1,
and Article I, § 7, Cls. 2 and 3, and is unconstitutional and void ab
initio.

"(W)hen action requiring a quorum was taken in the ascertained
absence of a quorum...the action (is) null and void, " House Doc. No.
769, supra, Constitution of the United States, § 55, p. (19)(citing
Hinds Precedents, Vol. IV, § 2964), and "a bill...not actully passed
(although) signed by the President (is to be) disregarded (requiring)
a new bill (to be) passed." House Doc. No. 769,§ 103, p. (34)(citing
Hinds Precedents, Vol. IV, § 3498)(App. 75).

C.   THE DISTRICT COURT ORDER COMMITING PETITIONER TO EXECUTIVE
     CUSTODY PURSUANT TO § 3231 (OF THE UNCONSTITUTIONAL PUBLIC
     LAW 80-772 WERE ISSUED ULTRA VIRES, ARE UNCONSTITUTIONAL
     AND CORAM NON JUDICE, AND HIS IMPRISONMENT IS UNLAWFUL

"The challenge in this case goes to the subject-matter jurisdiction
of the (respective district) court and hence power to issue the order,"
United States Catholic Conference v. Abortion Rights Mobilization, Inc.,
487 U.S. 72, 77 (1988), committing Petitioner to imprisonment in
Executive custody. Thus, the "question is, whether...(the district court)
action is judicial or extra-judicial, with or without the authority
of law to render (the) Judgment," Rhode Island v. Massachusetts, 37 U.S.
(12 Pet.) 657, 718 (1838), and to  issue the commitment order.

Subject-matter jurisdiction means "the courts' statutory or
constitutional power to adjudicate the case," United States v. Cotton,
535 U.S. 625, 630 (2002), quoting Steel Co. v. Citizens For A Better

Environment, 523 U.S. 83,89 (1998); Rhode Island v. Massachusetts, 37
U.S. (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine
the subject-matter in controversy between parties to a suit, to adjudicate
or exercise any judicial power over them."); Reynolds v. Stockton , 140
U.S. 254, 268 (1891)("Jurisdiction may be defined to be the right to
adjudicate concerning the subject matter in a given case."). "Subject-
matter limitations on federal jurisdiction serve institutional interests
by keeping the federal courts within the bounds the Constitution and
Congress have prescribed." Ruhrgas AG v. Marathon Oil Co.526 U.S. 574,
583 (1999).[16]

     "Without jurisdiction the court cannot proceed at all in any cause...
and when it ceases to exist, the only function of the court is that of
announcing the fact and dismissing the cause." Steel Co. v. Citizens,
523 U.S. at 94, quoting Ex parte McCardle, 74 U.S. (7 Wall) 506, 514
(1869); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992)("lack of
subject-matter jurisdiction...precludes further adjudication"). This
Court has asserted over and over that "(t)he requirement that jurisdiction
be established as a threshold matter 'spring(s) from the nature and
limits of the judicial power of the United States' and is inflexible

---

16    "Federal courts are courts of limited jurisdiction...jurisdiction
of the lower federal courts is further limited to those subjects encompassed
within a statutory grant of jurisdiction." Insurance Corp. of Ireland Ltd.
v. Compagnie des Bauxite de Guinea, 456 U.S. 694, 701 (1982); Kline v.
Burke Constr. Co., 260 U.S. 226, 234 (1922)(all lower federal courts 'derive
(their) jurisdiction wholly from the authority of Congress"); United States
v. Hudson & Goodwin, 11 U.S. 32, 33 (1812)(federal courts possess no
jurisdiction but what is given to them by the power that creates them.")
United States v. Hall, 98 U.S. 343, 345 (1879)(federal courts possess
no jurisdiction over crimes and offenses...except what is given to them
by the power that created them"); Hudson & Goodwin, 11 U.S. at 33-34,
See also e.g. United States v. Wiltberger, 18 U.S. 76, 95-105 (1820)
("the power of punishment is vested in the legislative, not the judicial
department," criminal statutes are to be construed strictly,"probability"
cannot serve to "enlarge a statute" and an offense not clearly within
the terms of a statute precludes federal court jurisdiction).

and without exception." Steel Co., 523 U.S. 94-95, quoting Mansfield. C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884):See also Insurance Corp. of Ireland. Ltd., 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, (and thus), can never be forfeited or waived...correction (is mandatory) whether the error was raised in district court" or not. United States v. Cotton, 535 U.S. at 630 (citation omitted); Steel Co., 523 U.S. at 94-95(citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action...(its) process(es) (are) void    an order of (punishment) based (thereupon)...must be reversed." United States Catholic Conf.,487 U.S. at 77: Wily v. Coastal Corp., 503 U.S. at 139 ("(T)he (punishment) order itself should fall with a showing that the court was without authority to enter decree.); Ex parte Fisk. 113 U.S. 713, 718 (1885)("When...a court of the United States undertakes, by its process...to punish a man...(respecting) an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing...is equally void.")

Habeas corpus review "is limited to the examination of the jur- isdiction of the court whose judgment of conviction is challenged." INS v. St. Cyr,533 U.S. 289, 311-314 (2001); Bowen v. Johnston, 306 U.S. 19, 23 (1939). A "court. 'has jurisdiction to render a particular judg- ment only when the offense charged is within the class of offenses placed by the law under its jurisdiction." 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to try petitioner, the judgment is void and the prisoner must be discharged. Ex parte Yarbrough, 110 U.S. 651, 654 (1884).

Petitioner Charles O. Eubanks have established that the text of H.R.3190 signed by respective House officers and the President of the

United States: (1) failed to pass the House of Representatives, and
(2) that the legislative process continued after Congress adjourned
by single officers of each House acting pursuant to H.Con.Res. 219,
without quorums in either House, all of which violated Article I,
Section 5,Clause 1; Article I, Section 7, Clause 2, and/or Article I,
Section 7, Clause 3-and any of which rendered Public Law 80-772
unconstitutional and void ab initio. Marbury v. Madison, 5 U.S. 137,
180 (1803)("a law repugnant to the constitution is void; and...courts
as well as other departments, are bound by that instrument"). Therefore,
because "the offenses charged...were placed by the law under (the)
jurisdiction," of the respective district courts below pursuant to
18 U.S.C. § 3231 of Public Law 80-772, which is unconstitutional and
void, the court was/is without jurisdiction and the petitioner (Charles
O. Eubanks) must be discharged." Yarbrough, 110 U.S. at 654. Since Public
Law 80-772 has never been enacted as required by Article I, Section
5, Clause 1, and Article I, Section 7, Clause 2 and 3 thereof, rendering
void ab initio the jurisdiction by which the respective district court
acted to convict, enter judgment and order petitioner imprisoned in
Executive custody, the district court actions were "ultra vires,"
Ruhrgas AG, 526 U.S. at 583 (quoting Steel Co., 523 U.S. at 101-102),
and "coram non judice." Rhode Island v. Massachusetts, 37 U.S. (12 Pet.)
at 720.

The conviction and judgment thereupon "being without jurisdiction
(are) void, and the order punishing...(are) equally void." Ex parte Fisk,
113 U.S. at 718; United States Cath. Conf. 487 U.S. at 77; Wily v.
Coastal Corp., 503 U.S. at 139. This is precisely the office and function
of habeas corpus-i.e., to "examin(e)...the jurisdiction of the court

whose judgment of conviction is challenged," Bowen v. Johnson, 306 U.S. at 23 and where, as here, the court were clearly "without jurisdiction... the petitioner...must be discharged." Ex parte Yarbrough, 110 U.S. at 654. See also Ex parte Lange, 85 U.S. (18 Wall) 163, 166 (1874).

## CONCLUSION

For these reasons, Petitioner (Charles O. Eubanks) pray that the said writ of habeas corpus issue and that he be immediately discharged from his unlawful imprisonment.

RESPECTFULLY SUBMITTED

Charles O. Eubanks Pro Se Petitioner

## CERTIFICATE OF SERVICE

I, Charles O. Eubanks Pro Se Petitioner in the above action certify under Penalty of Perjury that the facts stated or alleged herein are true and correct pursuant to Title 28 U.S.C. § 1746, and the petitioner caused all copie(s) to be forwarded to all parties (First Amendment Petition) to be sent to the Clerk of the U.S. District Court for Northern District of Illinois, via U.S. Mail Pre-paid Postage at this institutions legal officer/mail box, this ___29___ day of ___August___, 2008.

RESPECTFULLY SUBMITTED

Charles O. Eubanks